# Commonwealth *v.* Vitale, Appellant.

*Criminal law—Murder—Accessory before the fact—Jurors—*
*Expression of opinion on case before trial—Challenge for cause—*
*Peremptory challenges.*

1. When the opinion of a juror upon a vital question in a case involving life in which he is called to serve, has been formed upon evidence heard by him as juror on another trial involving the same question, such opinion becomes so fixed a belief as to disqualify him from serving on the jury in the second trial.

2. Where in a murder case, there are grounds for challenging a juror for cause, but the court overrules the challenge for cause, and the defendant is thereupon compelled to peremptorily challenge such juror, so that before twelve jurors are selected defendant exhausts his peremptory challenges, he is unlawfully deprived of a valuable right; a conviction in such case is illegal, and on appeal the judgment will be reversed.

3. At the trial of an indictment for murder, it appeared that defendant had been indicted as principal, but was being tried as accessory before the fact; that at a previous trial of another accessory the question of the guilt of the principal had been submitted to the jury and decided adversely to the defendant; three of the jurors who had found such accessory guilty were also called as jurors at the trial of the second accessory and were challenged for cause; the court overruled the challenges for cause and such jurors were peremptorily challenged by the defense. Other jurors were called after the defense had exhausted its peremptory challenges; the jury found a verdict of guilty of murder of the first degree and sentence of death was passed thereon. *Held,* that the refusal to sustain the challenges for cause was error and the judgment was reversed with a venire facias de novo.

Argued May 17, 1915.  Appeal, No. 195, Jan. T., 1915, by defendant, from judgment of O. & T. Lancaster Co., April Sessions, 1914, No. 29, on verdict of guilty of murder of the first degree in case of Commonwealth of Pennsylvania v. Augustine Vitale.  Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.  Reversed.

Indictment for murder.    Before LANDIS, P. J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict of guilty of murder of the first degree, upon which sentence of death was passed. Defendant appealed.

*Error assigned,* among others, was in overruling defendant's challenges for cause.

*B. F. Davis,* with him *John E. Malone,* for appellant.

*John M. Groff,* District Attorney, with him *Charles W. Eaby,* Assistant District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, July 3, 1915:

This appellant, a brother of Tony Vitale, the appellant in the preceding case, was indicted as a principal for the same murder.    He, too, was tried as an accessory before the fact, and, having been convicted of murder of the first degree, his appeal is from the judgment pronounced upon him.

The first four assignments allege error in the refusal of the learned trial judge to sustain three challenges of jurors for cause.    The trial of this appellant followed immediately after that of Tony Vitale.    On the same day that the jury returned a verdict against him Augustine was placed on trial.    Three of the jurors who had found Tony guilty were called in the case against Augustine, this appellant, and, after each one had answered, under oath, that he had neither formed nor expressed an opinion either in favor of or against the prisoner that would prevent him from rendering a verdict according to the evidence, and that he stood perfectly impartial between the Commonwealth and the prisoner, he was passed by the Commonwealth and challenged by the prisoner for cause, the cause assigned being that the juror, having sat in the case against Tony Vitale and found him guilty of the murder of Collata, had formed

and expressed such an opinion as disqualified him from sitting as a juror in the case against the prisoner.

The challenge of a juror for cause is addressed to the trial judge, and nothing short of palpable error will justify a reversal of his ruling on such a challenge: Commonwealth v. Sushinskie, 242 Pa. 406. The conclusion is not to be avoided that such error was committed in the case now before us, and, if so, the judgment must be reversed: Staup v. Commonwealth, 74 Pa. 458.

In his opinion overruling the motion for a new trial, the learned trial judge commented on the fact that each of the three challenged jurors, before being passed by the Commonwealth, had answered under oath that he had formed no opinion as to the guilt or innocence of the prisoner, but on the trial of this appellant a material fact to be established by the Commonwealth was the guilt of Rocco Tassone as the principal. In the charge to the jury they were instructed that the first question for their consideration was whether Tassone was the principal in the crime and had fired the fatal shot, and that it was necessary for them to so find before they could convict the appellant as an accessory before the fact. The three challenged jurors had found and solemnly returned, in the case of the Commonwealth against Tony Vitale, that Tassone was the principal in the crime and had actually committed the murder. A very proper question put by counsel for the prisoner to one of the challenged jurors, and disallowed by the court, was, "Have you formed an opinion as to the guilt or innocence of the principal, Rocco Tassone?" The answer of the juror, if he had been permitted to answer, would undoubtedly have been that he had formed and expressed an opinion that Tassone was guilty as the principal, and, if he had so answered, it is inconceivable that he could have been regarded as a competent juror to sit on the trial of the brother of the man whom he had just found guilty of identically the same offense as that charged in the indictment against the appellant. But

for the peremptory challenges that remained to the prisoner, the three jurors would have entered the jury box with most solemnly formed and expressed opinions that Tassone was the guilty principal; and yet that was a vital fact to be established by the Commonwealth by competent evidence on the trial of the appellant. "It was a part of the Commonwealth's case—a necessity of the situation—to prove the guilt of the principal before the accessory could be convicted": Buck v. Commonwealth, 107 Pa. 486. When the opinion of a juror upon a vital question in a case involving life, in which he is called to serve, has been formed upon evidence heard by him as a juror on another trial involving the same question, such opinion becomes so fixed a belief that it would be wrong to receive him: Staup v. Commonwealth, supra. He would not enter the jury box with "an unbiased and pure mind, as white paper, on which to write the legal evidence": Zell v. Commonwealth, 94 Pa. 258. This is too obvious for further discussion.

As the three jurors, unsuccessfully challenged for cause by the prisoner, did not serve, it is contended that he was not harmed, and this view is expressed by the court below denying the motion for a new trial. If the prisoner was deprived of any of his rights by the court's refusal to sustain the challenges for cause, he was substantially injured. In compelling a defendant charged with a capital offense to use a peremptory challenge to save himself from a juror obviously unfit to sit in judgment upon him, and whose challenge for cause ought manifestly to be sustained, he is deprived of one of twenty rights given to him by the law of the land. This is well illustrated by the present case. The prisoner had exhausted all of his twenty challenges before the twelve jurors were selected, and, when one of them was passed by the Commonwealth, he was accepted by counsel for the prisoner, with the remark "we have no challenges." On this appeal his learned counsel say that by those words they meant that their peremptory chal-

lenges were exhausted, and, as they had no legal cause to challenge the juror, they were compelled to accept him, though they felt he ought not to have served. Be this as it may, it stands out as a fact that the prisoner was deprived of his right to peremptorily challenge the juror by the ruling of the court on the three challenges for cause, which ought to have been sustained. The right of which he was thus deprived, given to a prisoner by the humanity of the law, is a most valuable one. Of it high authority has said: "In criminal cases, or at least in capital ones, there is, in favorem vitae, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all, which is called a peremptory challenge; a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous. This is grounded on two reasons. 1. As every one must be sensible what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reasons assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment, to prevent all ill consequences from which the prisoner is still at liberty, if he pleases, peremptorily to set him aside": 4 Blackstone 353. While the first four assignments of error must be sustained, we find nothing in the remaining twelve calling for a reversal of the judgment.

The judgment is reversed on the first four assignments of error, and the record is ordered to be remanded to the court below, together with a copy of this opinion, setting forth the cause of reversal, for further proceeding in the said court, and a venire facias de novo is awarded.