**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3220
_____

ISIDRO FLORES TEXIDOR, JR.,
Appellant

v.

LOUIS S. FOLINO, Superintendent, SCI Greene;
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
SCHUYLKILL COUNTY DISTRICT ATTORNEY
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 4-10-cv-01884)
District Judge: Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2014
_____

Before: FUENTES, GREENAWAY, JR., NYGAARD, *Circuit Judges*.

(Opinion Filed:  August 5, 2014)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Isidro Flores Texidor, Jr. ("Texidor") appeals from an order entered by the District Court denying his petition for a writ of habeas corpus. For the reasons discussed below, we will affirm the order and deny Texidor's request for habeas corpus relief.

## I. FACTUAL BACKGROUND

Because we write primarily for the parties who are familiar with the facts and procedural history, we recount only the essential facts.

On January 10, 2004, at approximately 2:30 am, Christine Pribish ("Pribish"), Ryan Winkler ("Winkler"), Christine Gearhart ("Gearhart"), Gearhart's three children, and a man named Maurice were at Gearhart's residence in Shenandoah, Pennsylvania. While Gearhart and Maurice were asleep upstairs and Gearhart's children were asleep in the living room, there was a knock at the door. Pribish, who was in the kitchen with Winkler, approached the door and was told "Man"[1] was at the door. Pribish awoke Gearhart upstairs, who then went downstairs and opened the door. Once the door was opened, Nazaniel Flores ("Flores") and David Ortega, Jr. ("Ortega"), with Texidor, pushed their way into the residence. Once inside, Texidor immediately placed Gearhart into a headlock and put a gun to her head. Gearhart and Pribish were then directed into the kitchen and told to sit on the floor. Flores brought Winkler, who had previously gone upstairs, back to the kitchen and told him to lie on the floor, while Flores placed his foot on the back of Winkler's head.

---

[1] Gearhart knew Nazaniel Flores as "Man" from prior drug related transactions.

Ortega tied Pribish's hands with duct tape and attempted to do the same with Gearhart, but she refused. Texidor then held a gun to Gearhart's head, to persuade her to comply, but when she refused again, Texidor hit her in the head with his gun. After this, Gearhart consented to be tied.

Once Gearhart, Pribish, and Winkler were secured in the kitchen, Texidor and Flores proceeded upstairs. Gearhart testified to hearing a struggle upstairs and then a gunshot. It was later determined that the bullet lodged itself in the coach where one of Gearhart's children were sleeping. Because the child screamed, Gearhart chewed through the duct tape around her hands, checked on her child, and then proceeded upstairs. Once upstairs, Gearhart found Flores rummaging through her dresser drawers. When Texidor and Flores found no money or safe, Texidor, Flores, and Ortega departed the residence.

Texidor was apprehended, tried before a jury, and found guilty of one count of robbery, three counts of aggravated assault, three counts of aggravated assault with a deadly weapon, three counts of simple assault, two counts of unlawful restraint, and criminal conspiracy. (App. 343-44.) The Court of Common Pleas sentenced Texidor to an aggregate term of 198 to 396 months of imprisonment. (App. 406.) After he was sentenced, Texidor filed a pro se notice of appeal to the Superior Court of Pennsylvania. The Superior Court affirmed Texidor's judgment of sentence, and the Supreme Court of Pennsylvania denied Texidor's petition for allowance of appeal. Texidor filed a pro se Post Conviction Relief Act ("PCRA") petition, which raised the issue of ineffective assistance of counsel. The PCRA court denied Texidor's petition, and the Superior Court

3

of Pennsylvania affirmed. Texidor filed a motion for allowance of appeal with the Pennsylvania Supreme Court, which was also denied.

On September 9, 2010, Texidor filed a petition for habeas relief in the District Court for the Middle District of Pennsylvania. The District Court, largely adopting the Report and Recommendation of Magistrate Judge Martin Carlson, denied the petition for habeas relief. This Court granted a certificate of appealability on the question of "whether sufficient evidence in the trial record supports Texidor's conviction of two counts of aggravated assault with a deadly weapon and two counts of aggravated assault against victims Pribish and Winkler." (App. 4.)

## II. JURISDICTION AND STANDARD OF REVIEW

Texidor brought this action under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. On this appeal, we exercise plenary review over the District Court's legal conclusions. *See Alston v. Redman*, 34 F.3d 1237, 1242 (3d Cir. 1994). Furthermore, "inasmuch as the district court relied on the state court record in concluding that the evidence was insufficient to support the convictions, we will exercise plenary review of that conclusion." *Orban v. Vaughn*, 123 F.3d 727, 729 (3d Cir. 1997).

## III. ANALYSIS

Texidor seeks to have this Court vacate the judgment of sentence for his conviction of aggravated assault and aggravated assault with a deadly weapon against Winkler and Pribish. Texidor argues that he is entitled to relief pursuant to 28 U.S.C.

4

§ 2254 because there was insufficient evidence produced at trial to establish the elements necessary for conviction under Pennsylvania law.[2]

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). A state court decision rejecting a sufficiency challenge may not be overturned on federal habeas review unless the "decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 768 (2010)).

On this appeal we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. at 319. We must apply the above standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

Under Pennsylvania law, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human

---

[2] Appellees seek to have this Court exercise its discretion to decline to review three of the four counts on the theory that "'the defendant remains sentenced in any event . . . .'" (Appellees' Br. 5 (quoting *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986).) Given the possibility that Texidor may suffer collateral consequences, we find it prudent to address the substantive issues surrounding all four claims and decline this invitation. *See Jones v. Zimmerman*, 805 F.2d at 1128 ("The fact that a defendant may possibly suffer collateral consequences, such as impaired parole eligibility, has been cited as an objection to use of the practice.").

life . . . ." 18 Pa. Cons. Stat. § 2702(a)(1). Attempt of a criminal act is attributed to the person when "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. Cons. Stat. § 901(a); *see also Commonwealth v. Lopez*, 654 A.2d 1150, 1154 (Pa. Super. 1995) (stating that attempt is established "when the accused intentionally acts in a manner which constitutes a substantial or significant step towards perpetrating serious bodily injury."). Pennsylvania courts have employed "a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006).

Here, the record shows that there was sufficient evidence presented at trial to enable the jury to conclude that Texidor had the requisite intent to inflict injury upon Winkler and Pribish. As to Winkler, Texidor held the gun to Winkler's head while his accomplice held him down with his foot on Winkler's neck. (*See* App. 335 ("We understand that Appellant did not inflict actual bodily injury to Winkler. However, Appellant did hold the weapon to Winkler's head while Flores held the victim down with his foot on Winkler's neck.").). Pribish was directed to get on the floor, and had her hands tied down with duct tape. Gearhart was merely ten feet away from Pribish when Gearhart's refusal to get her hands taped led to Texidor "pistol-whipp[ing]" her. (*See* App. 425-26, 440.) These circumstances conform to the kinds of cases in which Pennsylvania courts have found that defendants had the state of mind required to be guilty of aggravated assault. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa. 2006) ("Regarding the attempt element, there was sufficient evidence for the fact-finder

6

to conclude appellant took a substantial step towards inflicting serious bodily injury since he pushed a loaded gun against Wachter's throat . . . ."); *see also Commonwealth v. Daniels*, 354 A.2d 538 (Pa. 1976) (defendant fired a gun into crowd killing one man and injuring another); *Commonwealth v. Laing*, 456 A.2d 204 (Pa. Super. 1983) (defendant drove car into a crowd after having aimed it at one individual and then hit two people).

Evidence presented at trial was also sufficient to sustain Texidor's conviction for aggravated assault with a deadly weapon against Pribish and Winkler. Under Pennsylvania law, a person is guilty of aggravated assault with a deadly weapon when he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon . . . ." 18 Pa. Cons. Stat. § 2702(a)(4). The Pennsylvania statute defines deadly weapon to include "[a]ny firearm, whether loaded or unloaded . . . ." 18 Pa. Cons. Stat. § 2301. The record here is abundantly clear that Texidor possessed a firearm during the break-in, and fired it in the presence of children. (*See* App. 428 ("I heard a loud bang, and my daughter screamed Mommy, and I just jumped and I looked at Christine [Pribish] and I said that was a gunshot, wasn't it, and she said yea. And I wept running to my daughter."); App. 429 ("The bullet was lodged in the back of the couch . . . that [Gearhart's] daughter had been sleeping on . . . .").) Under these factual circumstances, a rational jury could have found that Texidor attempted to cause bodily injury with a deadly weapon to Winkler and Pribish. *See Cavazos v. Smith*, 132 S. Ct. at 4 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

7

Therefore, we find that the evidence was sufficient to sustain the four convictions of Texidor.

**IV. CONCLUSION**

For the foregoing reasons, we will affirm the order of the District Court.